IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DEMARCUS ANTONIO TAYLOR,    §
TDCJ No. 2082883,    §
    §
    Petitioner,    §
    §
V.    §        No. 3:17-cv-1153-N-BN
    §
DIRECTOR, TDCJ-CID,    §
    §
    Respondent.    §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Demarcus Antonio Taylor, a Texas prisoner, was convicted "of possession with intent to deliver cocaine in an amount of four grams or more but less than 200 grams in a drug-free zone," in violation of the Texas Health and Safety Code, and was sentenced to thirty years of imprisonment. *Taylor v. State*, No. 05-15-00567-CR, 2015 WL 7720483 (Tex. App. – Dallas Nov. 25, 2015, pet. ref'd), *aff'g as modified State v. Taylor*, No. F14-57392-S (282d Dist. Ct., Dallas Cnty., Tex. Apr. 23, 2015).[1]

Taylor filed a state habeas application, raising three grounds: that his trial counsel was constitutionally ineffective ("Ground 1"); that, as he argued on direct appeal, his sentence was excessive ("Ground 2"); and that the evidence was insufficient to support his conviction ("Ground 3"), and the Texas Court of Criminal

---

[1] *See also Taylor*, 2015 WL 7720483, at *1 (raising one issue on appeal: that "the thirty-year sentence is disproportionate and constitutes cruel and unusual punishment prohibited by the United State and Texas Constitutions" (citing U.S. CONST. amend. VIII; TEX. CONST. art. I, § 13)).

Appeals (the "CCA") denied his application without written order on the findings of the trial court made without a hearing, findings which concluded that Taylor failed to show a Sixth Amendment violation and that Grounds 2 and 3 were not cognizable on habeas review. *See Ex parte Taylor*, W14-57392-S(A) (282d Dist. Ct., Dallas Cnty. Feb. 24, 2017); *Ex parte Taylor*, WR-85,813-03 (Tex. Crim. App. Apr. 5, 2017) [Dkt. Nos. 12-1, 12-2].

Taylor then filed a habeas application under 28 U.S.C. § 2254 on April 25, 2017, the date on which he certifies that he placed the petition [Dkt. No. 3] in the prison mailing system.[2] *See id.* at 10. And his case was referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge David C. Godbey.

As ordered, *see* Dkt. No. 9, the State responded to the Section 2254 application, *see* Dkt. No. 12. Taylor filed a reply. *See* Dkt. No. 18. And the undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should deny federal habeas relief.

## Legal Standards

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district

---

[2] *See* RULE 3(d), RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS ("A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing."); *Uranga v. Davis*, 893 F.3d 282, 286 (5th Cir. 2018) ("We reaffirm that the operative date of the prison mailbox rule remains the date the pleading is delivered to prison authorities.").

court, this process begins – and often ends – with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted).

Under AEDPA, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Adekeye*, 938 F.3d at 682 ("Once state remedies are exhausted, AEDPA limits federal relief to cases where the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or was 'based on an unreasonable determination of the facts in light of the evidence presented.'" (citation omitted)); *see also Allen v. Vannoy*, 659 F. App'x 792, 798-99 (5th Cir. 2016) (per curiam) (describing Section 2244(d) as "impos[ing] two significant restrictions on federal review of a habeas claim ... 'adjudicated on the merits in state court proceedings'").

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g.*, *Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the CCA

on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by AEDPA" under "28 U.S.C. § 2254(d)").

And "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)).

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court precedent when it improperly identifies the governing legal principle, unreasonably extends (or refuses to extend) a legal principle to a new context, or when it gets the

principle right but 'applies it unreasonably to the facts of a particular prisoner's case.'" *Will v. Lumpkin*, ___ F.3d ____, No. 18-70030, 2020 WL 4744894, at *5 (5th Cir. Aug. 17, 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000); citation omitted). But the Supreme Court has only clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* (quoting *Taylor*, 569 U.S. at 380-82; citations omitted).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more

general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual

determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough

– the state court's decision must be "*based* on an unreasonable factual determination. … In other words, even if the [state court] had gotten [the disputed] factual determination right, its conclusion wouldn't have changed." *Will*, 2020 WL 4744894, at *6.

Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the

Supreme Court." *Evans*, 875 F.3d at 217.

## Analysis

Taylor raises four grounds for federal habeas review: the three he raised in the state habeas proceedings (Grounds 1, 2, and 3) plus a claim that the indictment and its enhancements are void for insufficient notice ("Ground 4"). *Compare* Dkt. No. 3, *with* Dkt. No. 12-1.

### I.    Ground 4

Ground 4 was neither raised in Taylor's state habeas application nor in his petition for discretionary review refused by the CCA. *See* Dkt. No. 14-9 (presenting one question for review: "Failing to bring a disproportionate sentence complaint before the trial court is not waiver because such a sentence is an illegal sentence and is, therefore, void, and a void sentence can be brought up for the first time on appeal.").[3] Therefore, the factual and legal basis of Ground 4 has not "been fairly presented to the" CCA, as the highest available state court, for review, which means that Taylor has failed to properly exhaust state court remedies as to this claim. *Campbell v. Dretke*, 117 F. App'x 946, 957 (5th Cir. 2004) ("'The exhaustion requirement is satisfied when the substance of the habeas claim has been fairly presented to the highest state court' so that a state court has had a 'fair opportunity to apply controlling legal principles to the facts bearing on the petitioner's

---

[3] *See also* TEX. R. APP. P. 53.2(f) ("The petition must state concisely all issues or points presented for review. The statement of an issue or point will be treated as covering every subsidiary question that is fairly included. If the matter complained of originated in the trial court, it should have been preserved for appellate review in the trial court and assigned as error in the court of appeals.").

constitutional claim.'" (quoting *Soffar v. Dretke*, 368 F.3d 441, 465 (5th Cir. 2004)));
*see* 28 U.S.C. § 2254(b)(1)(A); *see also Nickleson v. Stephens*, 803 F.3d 748, 753 (5th
Cir. 2015) ("The exhaustion doctrine demands more than allusions in state court to
facts or legal issues that might be comprehended within a later federal habeas
petition. The exhaustion doctrine is based on comity between state and federal courts,
respect for the integrity of state court procedures, and 'a desire to protect the state
courts' role in the enforcement of federal law.'" (quoting *Castille v. Peoples*, 489 U.S.
346, 349 (1989) (in turn quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)))).

Unexhausted claims should be found procedurally barred if "the court to which
the petitioner would be required to present his claims in order to meet the exhaustion
requirement would now find the claims procedurally barred." *Coleman v. Thompson*,
501 U.S. 722, 735 n.1 (1991).

Texas law precludes successive habeas claims except in narrow circumstances.
*See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 5. This is a codification of the judicially
created Texas abuse-of-the-writ doctrine. *See Barrientes v. Johnson*, 221 F.3d 741,
759 n.10 (5th Cir. 2000). Under this state law, a habeas petitioner is procedurally
barred from returning to the Texas courts to exhaust his claims unless the petitioner
presents a factual or legal basis for a claim that was previously unavailable or shows
that, but for a violation of the United States Constitution, no rational juror would
have found for the State. *See id.* at 758 n.9. Therefore, unexhausted claims that could
not make the showing required by this state law would be considered procedurally
barred from review on the merits in this Court unless an exception is shown. *See*

*Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001).

An exception to this bar allows federal habeas review if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

But Ground 4 is procedurally barred, because Taylor has not shown that the claim would be allowed in a subsequent habeas proceeding in state court under Texas law. Nor has he asserted the "fundamental miscarriage of justice" exception to procedural bar.

The Court should therefore deny Ground 4 as procedurally barred.

II.     <u>Ground 3</u>

Moving on to Ground 3, the state habeas court found that "[c]hallenges to the sufficiency of the evidence are not cognizable in post-conviction habeas proceedings." Dkt. No. 12-1 at 6 (citing *Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004)); *see also Bessire v. Quarterman*, No. 4:07-cv-597-Y, 2009 WL 54257, at *2 (N.D. Tex. Jan. 8, 2009) ("Under Texas law, while an allegation of 'no' evidence is cognizable in a state habeas proceeding, a sufficiency-of-the-evidence claim may only be raised on direct appeal and may not be raised in a state habeas proceeding." (citing *West v. Johnson*, 92 F.3d 1385, 1389 n.18 (5th Cir. 1996); *Grigsby*, 137 S.W.3d at 674; *Clark v. Texas*, 788 F.2d 309, 310 (5th Cir. 1986); *Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994))).

As stated above, Taylor did not raise this issue on direct appeal. And, where a

habeas petitioner first "challenges the sufficiency of the evidence in a state habeas application, and [the CCA] subsequently disposes of the application by entering a denial without written order, the applicant's sufficiency claim was denied because the claim is not cognizable." *Vaughn v. Stephens*, No. 4:14-cv-218-Y, 2015 WL 3504941, at *2 (N.D. Tex. June 3, 2015) (citing *Grigsby*, 137 S.W.3d at 674). "Under these circumstances, reliance on the procedural default by the state court is established and presents an adequate state procedural ground barring federal habeas review." *Id.* (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 801-07 (1991)).

And Taylor, again as to this ground, has neither demonstrated cause and actual prejudice nor asserted the fundamental-miscarriage-of-justice exception.

The Court should deny Ground 3 as procedurally barred.

III.   Ground 2

Ground 2, raised and rejected on direct appeal, was, like Ground 3, found to be not cognizable on state habeas review. *See* Dkt. No. 12-1 (citing *Ex parte Reynoso*, 257 S.W.3d 469, 475 (Tex. Crim. App. 2008)).

This Court may "look through" this ruling to examine the reasonableness of the state appellate decision. *See, e.g.*, *Divers v. Cain*, 698 F.3d 211, 216 (5th Cir. 2012) ("In denying Divers' petition for post-conviction relief, the state habeas court found that with the exception of one claim not relevant here, his arguments had been "previously considered and rejected" by the intermediate appellate court and the supreme court. In light of this determination, we examine the 'last clear state court decision of any substance.'" (quoting *Woodfox v. Cain*, 609 F.3d 774, 794 (5th Cir.

2010))); *see also Caldwell v. Davis*, 757 F. App'x 336, 340 (5th Cir. 2018) (per curiam) ("[B]ecause the order on collateral review did not consider the merits of Caldwell's claims, we "look through" to the last state court decision to do so: the state intermediate appellate court's decision on direct review." (citing *Ylst*, 501 U.S. at 804-06)).

In its decision, the Dallas Court of Appeals found, as to his single issue on appeal, "that the sentence is excessive and disproportionate for the offense," Taylor "did not object when he was sentenced, and his motion for new trial did not raise this complaint. Accordingly, he has not preserved the issue for appellate review." *Taylor*, 2015 WL 7720483, at *1 (citation omitted). The court of appeals alternatively found that

> punishment that is assessed within the statutory range for an offense is neither excessive nor unconstitutionally cruel or unusual. The punishment range for the offense of possession with intent to deliver cocaine in an amount four grams or more but less than 200 grams in a drug-free zone, a first-degree felony offense, is imprisonment for life or for any term not more than ninety-nine years nor less than ten years, and an optional fine up to $20,000. Appellant's thirty-year sentence is well within the statutory range.

*Id.* (citations omitted).

First,

> [t]o preserve a claim for federal habeas review, a defendant must make a specific and timely objection at the time of the allegedly objectionable conduct. Failure to object constitutes a procedural default, which bars federal habeas relief unless the petitioner shows either cause for the default and actual prejudice flowing from the alleged constitutional violation, or a miscarriage of justice.

*White v. Thaler*, 522 F. App'x 226, 230 (5th Cir. 2013) (per curiam) (citing *Wainwright v. Sykes*, 433 U.S. 72, 86-87, 87-91 (1977)); *see also Tanksley v. Lynaugh*, CIV. A. No.

- 13 -

V-87-40, 1998 WL 90187, at *2 (S.D. Tex. May 5, 1988) ("The state appellate court held that the Petitioner did not comply with the state's procedural rules. Consequently, Petitioner's claim is governed by *Wainright v. Sykes*, 433 U.S. 72 (1977). The *Sykes* bar precludes federal habeas corpus relief on grounds which were not presented to the state court in the manner prescribed by the state's procedural rules, absent cause for the omission and actual prejudice.").

To the extent that Ground 2 was denied on state procedural grounds, in the only state court decision of any substance – that is, addressing the ground's merits – Taylor has as to Ground 2, as with Grounds 3 and 4, "failed to demonstrate a fundamental miscarriage of justice," "and he did not offer any cause for the default." *White*, 522 F. App'x at 230.

The Court should therefore deny Ground 2 as procedurally barred.

Alternatively, to the extent that the Dallas Court of Appeals addressed Ground 2 on the merits by finding that, because Taylor's sentence was within the statutory range, it "is neither excessive nor unconstitutionally cruel or unusual," *Taylor*, 2015 WL 7720483, at *1, Taylor has not shown that this determination is unreasonable under Section 2254(d), *see, e.g.*, *Haynes v. Butler*, 825 F.3d 921, 923-24 (5th Cir. 1987) ("Although wide discretion is accorded a state trial court's sentencing decision and claims arising out of the decision are not generally constitutionally cognizable, relief may be required where the petitioner is able to show that the sentence imposed exceeds or is outside the statutory limits, or is wholly unauthorized by law. If a sentence is within the statutory limits, the petitioner must show that the sentencing

decision was wholly devoid of discretion or amounted to an "arbitrary or capricious abuse of discretion," or that an error of law resulted in the improper exercise of the sentencer's discretion and thereby deprived the petitioner of his liberty." (citations omitted)).

IV.   <u>Ground 1</u>

Turning finally to the various reasons why Taylor believes that trial counsel provided constitutionally ineffective assistance of counsel ("IAC"), the Court reviews IAC claims, whether directed at trial or appellate counsel, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a petitioner "'must show that counsel's performance'" – "'strongly presume[d to be] good enough'" – "'was [1] objectively unreasonable and [2] prejudiced him.'" *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020) (quoting *Howard v. Davis*, 959 F.3d 168, 171 (5th Cir. 2020)).

To count as objectively unreasonable, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (per curiam) (quoting

*Strickland*, 466 U.S. at 694).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003); *see also Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) ("[B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)).

And, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting

*Richter*, 562 U.S. at 105); *see also Sanchez*, 936 F.3d at 305 ("As the State rightly puts it, we defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance.'" (quoting *Rhodes*, 852 F.3d at 434)).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court adjudicated claims of ineffective assistance on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*,

563 U.S. 170, 190, 202 (2011); *compare Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)), *with Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)). In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101.[4]

---

[4] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered

Taylor alleges that his trial gave erroneous advice (1) about the possibility of receiving probation at trial and (2) not to accept the State's offer of ten years and (3) allowed Taylor to be "enhanced with the finding of a deadly weapon he was never charged with."

The state court, after obtaining an affidavit from Taylor's trial counsel, *see* Dkt. Nos. 12-1 & 12-5, and entered detailed findings of fact and conclusions of law recommending denial of the IAC claims, *see* Dkt. No. 12-1 at 3-6.

As applicable to Taylor's Section 2254 IAC claims:

> 1. In his first ground for relief, Applicant contends he was denied the effective assistance of counsel because trial counsel (1) gave erroneous advice about whether to take the State's offer or go to trial, (2) failed to challenge the deadly weapon enhancement, (3) failed to ask about the confidential informant or subpoena him to trial, (4) failed to seek out and interview potential witnesses.
> 2. A defendant has the right to effective assistance of counsel.
> 3. To prevail on a claim of ineffective assistance of counsel, a habeas applicant must prove by a preponderance of evidence that (1) his

adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Adekeye*, 938 F.3d at 683-84 ("The Supreme Court standard on prejudice is sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was 'reasonably likely' the jury would have reached a different result, not merely that it could have reached a different result. The Court reaffirmed this point in *Richter*: 'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of reasonableness. [Where] the state court has already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable."' Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently]. 'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted)).

counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that the results of the proceedings would have been different in the absence of counsel's errors.

4. The right to reasonably effective assistance of counsel does not guarantee errorless counsel or counsel whose competency is to be judged by hindsight.

5. Counsel's competence is presumed, and the applicant must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action or inaction was not sound strategy.

6. Applicant first contends that his counsel was ineffective for giving him erroneous advice about his potential sentence and whether he should take the State's plea offer or proceed to trial. Applicant specifically alleges that counsel promised him that he would either be placed on community supervision or receive a sentence of no more than ten years in prison.

7. In response to Applicant's application, the Court ordered Applicant's trial counsel, Mr. Carlton Hughes, to provide the Court with an affidavit addressing Applicant's allegations. The Court finds Mr. Hughes' affidavit to be credible.

8. The Court finds that Mr. Hughes properly conveyed the State's plea offer of ten years' imprisonment to Applicant. Mr. Hughes also admonished Applicant numerous times about the range of punishment and that he risked a maximum sentence of ninety-nine years if he went to trial.

9. The Court further finds that the trial court twice admonished Applicant about the range of punishment he faced at trial. The State's offer of ten years was also mentioned during the admonitions and Applicant rejected the offer twice.

10. Applicant also alleges that Mr. Hughes gave him erroneous information about Applicant's eligibility for probation. Specifically, Applicant claims that Mr. Hughes incorrectly told him that he could receive probation from the jury.

11. A jury that imposes confinement as punishment for an offense may recommend to the judge that the judge impose suspension of the sentence and place the defendant on community supervision. A judge shall suspend the imposition of the sentence and place the defendant on community supervision if the jury makes that recommendation in the verdict.

12. Applicant claims that he could not be placed on community supervision because the jury made a finding that he used a deadly weapon in committing the offense. However, the prohibition on placing a defendant on community supervision after the finding of a deadly

- 20 -

weapon is limited to judge-ordered community supervision.

13. The Court finds that the State was not offering community service and it could not be granted by the trial court judge. Therefore, the only way Applicant could have received the probated sentence he desired was to go to trial and request it from the jury. Applicant's allegation that Mr. Hughes gave him erroneous advice is incorrect.

14. The Court finds that Applicant was properly informed of the potential risks and benefits involved in going to trial and that Applicant made a knowing and voluntary decision to do so. Therefore, the Court concludes that Applicant's first allegation as to why he was denied ineffective assistance of counsel is without merit.

15. Applicant also contends that he received ineffective assistance because his Mr. Hughes did not challenge the deadly weapon enhancement.

16. Applicant fails to specify what challenges Mr. Hughes should have made to the deadly-weapon enhancement paragraph and what evidence he should have challenged it with. Applicant also appears to confuse a deadly-weapon enhancement with a prior-conviction enhancement, arguing that the State failed to prove the enhancement because he never had any prior deadly-weapon convictions.

17. The Court finds that Applicant's claim that Mr. Hughes should have challenged the deadly-weapon enhancement paragraph is conclusory and, therefore, Applicant has failed to show that Mr. Hughes was ineffective.

*Id.* at 3-5.

Considering these findings, made after obtaining uncontroverted sworn testimony, which the state court found to be credible, and applying the deferential *Strickland* standards – through the deferential lens of AEDPA – to the applicable state court findings and conclusions, as the Court must, Taylor has not shown that the CCA's denial of any claim that his trial counsel's representation violated his rights under the Sixth Amendment amounts to either "an unreasonable application of *Strickland* or an unreasonable determination of the evidence." *Garza v. Stephens*, 738 F.3d 669, 680 (5th Cir. 2013) (citing 28 U.S.C. § 2254(d)(1)-(2)); *see also, e.g.*, *Rhodes*, 852 F.3d at 432, 434; *Sanchez*, 936 F.3d at 305.

The Court should therefore deny Ground 1.

## Recommendation

The Court should deny the application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: September 3, 2020

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE